UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER THOMAS GIROLAMO,

              Plaintiff,

    -vs-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

              Defendant.
_____

**DECISION AND ORDER**
**No. 13-CV-06309(MAT)**

## INTRODUCTION

Plaintiff, Christopher Thomas Girolamo ("Plaintiff" or "Girolamo"), brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Plaintiff's motion to the extent that the Commissioner's decision is reversed and the matter remanded for further administrative proceedings consistent with this Decision and Order.

## PROCEDURAL HISTORY

On July 22, 2010, Plaintiff filed applications for DIB and SSI, alleging disability as of June 1, 2009, which were denied.

Administrative Transcript [T.] 149-150, 151-154, 63-69, 71-75.  At Plaintiff's request, an administrative hearing was conducted on September 2, 2011 before an administrative law judge ("ALJ"), at which Plaintiff, who appeared with a representative, testified as did a vocational expert ("VE").  T. 8-39, 134-141.  On October 12, 2011, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant period.  T. 44-56.

The Appeals Councils denied Plaintiff's request for review on April 25, 2013, making the ALJ's Decision the final decision of the Commissioner.  T. 1-5.  This action followed.

## FACTUAL BACKGROUND

### Plaintiff's Statements & Hearing Testimony

Plaintiff was age 39 at the time of the hearing.  T. 10, 15. Plaintiff has an associate's degree, and prior work experience as a dark room finisher and a rotary dye cutter operator.  T. 19, 170.

Plaintiff underwent spinal fusion surgery in 2003, returned to work after, and continued working until 2009.  T. 19, 24-25, 169. Plaintiff was laid off in June 2009 and collected unemployment benefits while he looked for work that did not require prolonged sitting or standing.  T. 20, 32.  According to Plaintiff, his back pain, "spinal headaches," and depression preclude him from working. T. 22, 24-26, 169, 177, 180.

Plaintiff arrived at the hearing with a cane that he had been using for about one year, and testified that he uses a cane to move about outside his home.  T. 16-17.  He takes hydrocodone,

oxycodone, and ibuprofen for pain and Zoloft for depression. T. 17-18, 171.  Plaintiff testified that he takes six or seven hydrocodone pills a day and that the side effects from his medications are constipation, moodiness, and difficulty focusing. T. 18, 28-29, 183-184.

With respect to his daily activities, Plaintiff testified that he wakes up, makes coffee, lets his dog out, does limited driving to pick up his kids, and reads.  T. 21, 177, 185.  Plaintiff's brother and sister help him with household chores and his 13-year-old son helps him with groceries and dog walking.  T. 21-22, 177-178.

**Medical Evidence Related to Plaintiff's Physical Health**

In November 2009, Plaintiff saw Dr. Matthew J. Fleig of Ridgeway Family Medicine ("Ridgeway"), complaining of wrist and back pain.  Dr. Fleig instructed Plaintiff to take Aleve for his wrist pain and to continue to take Vicodin for his back pain. T. 255.

In March 2010, Plaintiff underwent an X-ray of his lumbosacral spine, which showed L5-S1 fusion and mild narrowing of the remaining disc spaces and minimal degenerative spurring throughout the lumbar spine.  T. 318.

In April and May 2010, Plaintiff underwent therapy at Healthquest Chiropractic & Progressive Rehab.  Throughout this time, Plaintiff reported that his low back pain was minimal to mild.  T. 346-361, 363.  In June 2010, Plaintiff reported that his

low back pain and right hip pain were "mildly-severe" and that it restricted "some activity." T. 366.

On July 9 and September 17, 2010, Plaintiff returned to Ridgeway, complaining of increased back pain symptoms, sciatica and trouble walking. In July, Dr. Fleig assessed lumbar degenerative disc disease with right sciatica, prescribed a trial of Norco, and referred Plaintiff to a neurosurgeon. T. 254. In September, Dr. Fleig prescribed oxycodone and again diagnosed lumbar degenerative disc disease with right sciatica. Dr. Fleigh noted that he "instruct[ed] [Plaintiff] to apply for temporary disability and establish insurance hopefully through Medicaid, he needs neurosurgery evaluation sooner rather than later in order to address symptoms." T. 253.

On October 4, 2010, Suzanne Picinich, D.O. performed a consultative examination of Plaintiff. T. 282-286. She diagnosed "lumbosacral degenerative disc disease L5-S1, status post fusion and bilateral foraminotomies probable progression of L3-4 and L4-5 disc deterioration previously noted seven years ago and now to a critical level." T. 285. She also diagnosed chronic right wrist pain and bilateral knee stiffness. She noted that Plaintiff's prognosis was "stable" and "unlikely to change." T. 285. She reported that Plaintiff's current medications included, among others, hyrocodone, oxycodone, Excedrin, and Advil. T. 283. Upon examination, Dr. Picinich noted that Plaintiff "appeared to be in mild distress secondary to discomfort and anxiety." T. 285. She

-4-

noted that Plaintiff's gait was "essentially normal," that he could walk on heels and toes, and that he was only able to squat 60% of the way to the floor, using his arms for assistance. She also reported that he used a cane for weight-bearing and for pain management. She noted that he was able to change for the exam on his own and did not need assistance getting on and off the exam table, and was able to rise from a chair with "a little awkwardness" due to his leg and back stiffness. T. 284. Dr. Picinich assessed that Plaintiff's hand and finger dexterity were intact and his grip was full, he had full range of motion and muscle strength in his upper extremities, and that his reflexes were physiologic and equal. She reported that his lumbar spine had limited flexion and extension and mild paraspinal tenderness. Plaintiff's straight leg raises were negative and his hips and ankles had full range of motion. He had limited knee flexion bilaterally, and his lower extremities had full muscle strength with no muscle atrophy. T. 284-285. She noted that Plaintiff had tenderness of the sciatic notch and in the lumbosacral regions and that he had a mild increase in myotonis.

Dr. Picinich opined that Plaintiff had "moderate limitations" for flexing and bending at the lumbar spine, lifting, carrying, kneeling, walking, climbing stairs, sitting or standing for "prolonged periods" without changing position and for driving or riding in a vehicle for any length of time. She also opined that Plaintiff had "mild limitations" for use of the right hand due to

wrist discomfort and minimal limitations for using it for short duration activities.  T. 285.

On November 10, 2010, S. Putcha, a State Agency physician, reviewed the medical evidence in the record and diagnosed Plaintiff with "L5-S1 fusion - back pain."  T. 292.  She opined that Plaintiff was able to "occasionally" lift and/or carry up to 10 lbs, "frequently" lift and/or carry less than 10 lbs, stand and/or walk for at least 2 hours in an 8-hour workday, and sit (with normal breaks) for a total of 6 hours in an 8-hour workday. T. 293.  Dr. Putcha opined further that Plaintiff had an "unlimited" ability to push and/or pull.  Dr. Putcha reported that Plaintiff used a cane for walking, had spinal fusion surgery in 2003, and that he complained of increased back pain.  She reported that he had no loss of reflexes or sensation, no muscle atrophy, and normal movements.  Dr. Putcha opined that Plaintiff could "occasionally" climb, balance, stoop, kneel, crouch, and crawl and had no manipulative, visual, and no communicative and environmental limitations.  T. 294-295.  She assessed that Plaintiff's RFC was "reduced to sedentary function."  T. 295.

Plaintiff underwent a lumbosacral spine x-ray on December 1, 2010, which revealed unremarkable and stable appearance of L5-S1 fusion.  Small osteophyte ridges at L2, L3 and L4 were noted in addition to mild degree of disc space narrowing.  No acute bony abnormalities were seen.  T. 428.

In February 2011, Plaintiff met with neurosurgeons Christopher Gallati and Howard J. Silberstein at Strong Memorial Hospital ("Strong") for possible surgical intervention with respect to his continued complaints of low back pain, headaches and radiating pain. T. 437-439. Upon physical examination, Plaintiff had full strength in all extremities, but somewhat decreased strength in his right lower leg "likely secondary to pain." Sensation was intact to light touch "grossly throughout," with some decreased touch in his right leg, calf, and some of his foot. T. 438. Plaintiff's deep tendon reflexes were 1+ in his upper and lower extremities. Plaintiff was able to ambulate with "relative ease" and walk on his heels and toes without difficulty. His straight leg raising was negative bilaterally. Dr. Gallati assessed that Plaintiff had "symptoms of right lower extremity pain suspicious for radiculopathy." T. 438. Dr. Gallati recommended a CT myelogram, which revealed moderate central canal stenosis with bilateral mild to moderate neural foraminal stenosis. T. 438, 440-442.

In May 2011, Plaintiff returned to Strong. T. 446-447. Based on Plaintiff's CT myelogram of his lumbar spine, Dr. Silberstein recommended left L5 nerve root decompression, which Plaintiff elected to have performed. T. 446.

In June 2011, Dr. Silberstein performed a decompressive laminectomy of L4-L5 with removal of synovial cyst and removal of right-sided pedicle screw hardware and rod. T. 451-452. Post-

operative records show that Plaintiff "tolerated surgery well, but developed a post operative headache." T. 454. Plaintiff was subsequently discharged from the hospital in "good condition." T. 454-455, 624.

In July 2011, Plaintiff followed up with Dr. Silberstein, at which time Dr. Silberstein noted that Plaintiff reported that his headaches had almost completely resolved, his leg pain was about 50% better, but his low back pain was unchanged. Dr. Silberstein noted that Plaintiff's low back pain "may not see any significant improvement." T. 631. Dr. Silberstein, recommended Plaintiff continue with physical therapy, prescribed Vicodin and ibuprofen, and recommended no heavy lifting. T. 631.

**Evidence Related to Plaintiff's Mental Health**

On October 4, 2010, consultative psychologist Thomas Zastowny, Ph.D. performed a mental status evaluation of Plaintiff. T. 277-281. Dr. Zastowny reported that: Plaintiff's thought process was intact and goal-directed, his affect was full range, his mood was relaxed and somewhat sad, his attention and concentration were limited but intact, his recent and remote memory skills were slightly impaired, his judgment was limited, and his cognitive functioning was adequate. T. 278-280.

Dr. Zastowny diagnosed depressive disorder, NOS, and mood disorder due to a general medical condition. T. 280. He opined that Plaintiff can follow simple directions and perform simple tasks. He reported that Plaintiff's concentration and attention

appeared mildly to somewhat impaired due to pain, Plaintiff's ability to handle stressful events appeared limited, and Plaintiff's judgment and decision making were also limited. T. 281, 285.

On November 12, 2010, State Agency psychologist E. Kamin reviewed the record and opined that Plaintiff had mild restriction in activities of daily living, mild difficulties in maintaining social functioning as well as in maintaining concentration, persistence or pace. T. 308. Dr. Kamin also reported that Plaintiff never had repeated episodes of decompensation. Dr. Kamin completed a Mental RFC Assessment form, opining that Plaintiff may have difficulties with complex/detailed tasks but can do simple work. T. 312-314.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405 (g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard.  Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II.  The Commissioner's Decision Denying Plaintiff Benefits

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating

disability claims.   20 C.F.R. § 404.1520.   Pursuant to this
inquiry:

> First, the Commissioner considers whether the
> claimant is currently engaged in substantial
> gainful activity. If he is not, the
> Commissioner considers whether the claimant
> has a "severe impairment" which significantly
> limits his ability to do basic work activity.
> If the claimant has such an impairment, the
> Commissioner considers whether, based solely
> on medical evidence, the claimant has an
> impairment which is listed in Appendix 1,
> Part 404, Subpart P. If the claimant does not
> have a listed impairment, the Commissioner
> inquires whether, despite the claimant's
> impairment, he has the residual functional
> capacity to perform his past work. If he is
> unable to perform his past work, the
> Commissioner determines whether there is other
> work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 466-67 (2d Cir. 1982).

The ALJ in this case used this sequential procedure to
determine Plaintiff's eligibility for disability benefits.  The ALJ
found that:  Plaintiff did not engage in substantial gainful
activity since June 1, 2009, the alleged onset date;  that
Plaintiff had the severe impairments of degenerative disc disease
of the lumbar spine, status post lumbar laminectomy, and
depression; that Plaintiff did not have an impairment or
combination of impairments that meets or medically equals one the
Listed Impairments;  that Plaintiff retained the residual
functional capacity ("RFC") to perform sedentary work, with certain
limitations; that Plaintiff is unable to perform any past relevant
work; and that considering Plaintiff's age, education, work
experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  T. 20-21.  The ALJ determined therefore that Plaintiff was not disabled during the relevant period.

### III. The ALJ's RFC Determination is the Product of Legal Error and Not Supported by Substantial Evidence

At Point 2 of Plaintiff's Supporting Memo, Girolama challenges, among other things, various aspects of the ALJ's physical RFC determination, maintaining that it is not supported by substantial evidence and is erroneous as a matter of law.  Dkt. No. 12-1 at Point 2.  The Commissioner counters, arguing that the ALJ applied the proper legal principles in assessing Plaintiff's RFC and that her assessment is supported by substantial evidence, namely the opinions of consultative examiner Dr. Picinich and State Agency physician Dr. Putcha.  Dkt. No. 13-1 at 14-15.

An ALJ's obligation to obtain necessary medical records includes an obligation to obtain a proper assessment of a claimant's RFC.  See 20 C.F.R. § 404.1513(b) (describing "medical reports" as including "statements about what [a claimant] can still do").  Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.  See Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically

explain the scope of claimant's work-related capabilities."); Zorilla v. Chater, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.").

In this case, in assessing Plaintiff's physical RFC, the ALJ found that Plaintiff was capable of performing sedentary work, with the following additional limitations: that he requires the option to alternate between a sitting and standing position every 30 minutes, he can occasionally use ramps and climb stairs, but can never climb ladders, ropes or scaffolds, can occasionally balance, stoop, kneel, crouch and crawl, and should avoid hazards, including moving machinery and unprotected heights.  T. 51-54.  Sedentary work is work that requires "up to two hours of standing or walking and six hours of sitting in an eight-hour work day."  Wright v. Astrue, 2009 U.S. Dist. LEXIS 111362, 2009 WL 4547065, at *14 (E.D.N.Y. Dec. 1, 2009) (citing Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996);  SSR 83-10, 1983 SSR LEXIS 30, 1983 WL 31251; 20 C.F.R. § 404.1567(a)).  It also involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

The ALJ stated in her decision that, in determining Plaintiff's RFC, she gave "great" weight to the opinions of Plaintiff's neurosurgeon and State Agency physician Putcha, and

that she "relied" on the opinion of consultative examiner Picinich. The ALJ's RFC assessment contains several flaws.

First, the ALJ stated that she gave "great weight" to the "view expressed" by Plaintiff's treating neurosurgeon and cited to the post-2011 operative notes from Dr. Silberstein.  T. 53, 624-634.  However, with the exception of a single statement by Dr. Silberstein in his July 2011 report that Plaintiff avoid "heavy lifting at this point in time" -- which the ALJ did not specifically address in her decision -- his notes do not contain an RFC analysis or otherwise assess Plaintiff's functional limitations.  Id.  Where a treating physician has not assessed a claimant's RFC, the ALJ's duty to develop the record requires that he sua sponte request the treating physician's assessment of the claimant's functional capacity.  Myers v. Astrue, 2009 U.S. Dist. LEXIS 61600, 2009 WL 2162541 (N.D.N.Y. July 17, 2009); Felder v. Astrue, 2012 U.S. Dist. LEXIS 129384, 2012 WL 3993594 (E.D.N.Y. Sept. 11, 2012). (Commissioner has affirmative duty to request RFC assessments from plaintiff's treating sources, despite otherwise complete medical history); 20 C.F.R. § 404.1513.

Moreover, the Court notes that while the ALJ states that she afforded Dr. Silberstein's opinion "great" weight, she did not fairly represent the contents of Dr. Silberstein's "view" in her decision.  Specifically, she characterizes his "view" as one that, overall, provides a positive prognosis showing "continued improvement."  She states that Dr. Silberstein's post-operative

notes indicate that "Plaintiff's headaches were 'resolved' and [that] [Plaintiff] experienced significant pain relief in his lower extremity pain." T. 53. This, however, is a selective reading of Dr. Silberstein's July 2011 report. The ALJ makes no mention of Dr. Silberstein's note that, while Plaintiff's headaches and lower extremity pain were reduced, his "low back pain [was] unchanged" and that Plaintiff "may not see significant improvement." T. 53, 631. She also fails to mention that, although Dr. Silberstein recommended a "conservative recovery plan through physical therapy" following Plaintiff's surgery, he also continued to prescribe prescription pain killers (Vicodin) and recommended that Plaintiff take 800mg of ibuprofen "around the clock, 3 times a day" for his pain. T. 631. Additionally, while the ALJ also notes in her decision that Dr. Silberstein's post-operative notes show that Plaintiff "was recently evaluated for pain management physical therapy, and his first appointment was scheduled for September 26, 2011," there are, no records related to this therapy in the record or any subsequent follow-up treatment records from any physician. Accordingly, I find that the ALJ neglected to develop the record by gathering a treating source opinion from Plaintiff's treating neurosurgeon whether Plaintiff's physical impairments affected his ability to perform work-related activities.

Second, the ALJ stated that she "relied" on the opinion of Dr. Picinich in assessing Plaintiff's RFC. In her October 4, 2010 opinion, however, Dr. Picinich described Plaintiff's abilities for

flexing and bending, lifting, carrying, kneeling, walking, and
climbing stairs in terms of being "moderately limited" and assessed
that his ability for sitting or standing without changing position
was restricted for "prolonged periods."   The terms "moderately
limited" and "prolonged periods" under the circumstances in this
case are vague, as it is not clear to the Court how the ALJ used
Dr. Picinich's opinion to assess that Plaintiff was able to perform
sedentary work with the particular following limitations:   the
option to alternate between a sitting and standing position every
30 minutes; he can occasionally use ramps and climb stairs, but he
can never climb ladders, ropes or scaffolds; he can occasionally
balance, stoop, kneel, crouch, and crawl; and he should avoid
hazards, including moving machinery and unprotected heights.
Moreover, Dr. Picinich's opinion was rendered in October 2010,
prior to Plaintiff's second surgery in 2011 and the related
diagnostic testing associated therewith.   As such, Plaintiff did
not have the benefit of the CT myelogram from May 2011 showing
"moderate central canal stenosis with mild to moderate neural
foraminal stenosis," as well as the 2011 surgical records and/or
follow-up records.

    Similarly, the ALJ stated that she assigned "great weight" to
the medical source statement of State Agency physician Putcha.
Dr. Putcha's opinion, however, was not based on a personal
examination of Plaintiff, and, like Dr. Picinich's opinion, was
based on an incomplete record since it was rendered in November

2010 <u>before</u> Plaintiff's 2011 surgery and related diagnostic testing. <u>See</u> <u>Dowling v. Colvin</u>, No. 5:12-CV-1181 (LEK/VEB), 2013 U.S. Dist. LEXIS 179646, 2013 WL 6800207, at *7 (N.D.N.Y. Dec. 20, 2013) (opinion of a non-examining State Agency review consultant opinion "should have been afforded limited weight, as it was not based on an examination and, more importantly, was based on an incomplete record insofar as it was rendered before [the claimant's treating source] provided her assessment. . . .") (citing <u>Griffith v. Astrue</u>, 08-CV-6004, 2009 U.S. Dist. LEXIS 27533, 2009 WL 909630, at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); <u>McClean v. Astrue</u>, 650 F. Supp. 2d 223, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. 2009)).

Further, the ALJ stated that she relied on the opinions of Drs. Picinich and Putcha in assessing Plaintiff's RFC because they were "consistent" with Plaintiff's treatment history, both before and after the claimant's second surgery. T. 53-54. The ALJ, however, does not explain -- nor is it evident to this Court -- what evidence in particular she is referring to and/or how Plaintiff's treatment records support her assessment that Plaintiff retains the ability to perform sedentary work with the particular additional limitations she assessed. A review of the record shows that while Plaintiff recovered well from his 2003 spinal fusion surgery and even returned to work for several years, he began to

experience significant back pain again in 2010.  In February 2011, when Plaintiff met with Dr. Silberstein for possible neurosurgical intervention, Dr. Silberstein specifically noted that Plaintiff "seems to have failed all conservative managements."   T. 438. Diagnostic testing performed in May 2011 showed mild to moderate degenerative changes, as a diagnosis of moderate central canal stenosis with bilateral mild to moderal neural foraminal stenosis was rendered.   The CT myelogram also showed evidence of nerve compression insofar as it was noted that "soft tissue indents the thecal sac and flattens the L5 nerve root sheaths bilaterally." T. 441.  Plaintiff's treatment records following the 2011 surgery -- which consist of a single post-operative report from Dr. Silberstein one month after the surgery -- show that Plaintiff's low back pain remained unchanged and that continued physical therapy and prescription pain killers were prescribed to help Plaintiff manage his pain.  Additionally, the Court notes that Plaintiff's "treatment record" -- which the ALJ refers to in general terms in her decision -- is otherwise silent as to Plaintiff's specific functional abilities and/or his limitations resulting from his physical impairments.

As a final matter, the Court notes that Plaintiff arrived at the hearing with a cane, and he testified that he had been using a cane for approximately one year and that his doctor had recommended it for him.  T. 16.  Plaintiff testified further that he uses the

cane when he moves about outside his house. T. 17. During the administrative hearing, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's RFC, age, education and experience with the additional limitation that the individual would be limited to jobs that can be performed while using a hand-held assistive device at all times in his dominant right upper extremity when standing or ambulating. The VE testified that no jobs existed for such an individual because "the individual is limited to one handed work when standing and that's just not permitted with sedentary work." T. 36. While the ALJ acknowledged Plaintiff's testimony that he uses a cane for ambulating outside his home in her decision (T. 52), she apparently gave no weight to the VE's finding that Plaintiff's use of a cane would prevent him from working. Thus, the use of a cane should be considered upon remand and its affect upon Plaintiff's ability to perform any job in the national economy with that limitation.

Because further development of the record may affect the ALJ's determinations regarding Plaintiff's credibility and capability, Plaintiff's remaining arguments need not be considered at this time.

### III. Remand is Appropriate

Under 42 U.S.C. § 405(g), district courts may affirm, reverse, or modify a decision of the Commissioner "'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d

377, 385 (quoting 42 U.S.C. § 405(g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 Civ. 4861 (ARR), 2008 U.S. Dist. LEXIS 39056, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008) (internal quotation marks and citations omitted). For the reasons provided above, I find that Girolamo's case be remanded for further administrative proceedings consistent with this Order.

On remand, the ALJ is directed to obtain opinions regarding Plaintiff's functional limitations from his treating neurosurgeon, namely Dr. Silberstein. The ALJ shall obtain updated medical opinions from consultative examiner Dr. Picinich and State Agency physician Dr. Putcha that take into account the evidence related to Plaintiff's 2011 laminectomy, including treatment records, diagnoses, prognoses, and diagnostic testing related thereto. Further, in assessing Plaintiff's RFC, the ALJ should provide a specific rationale as to how the medical and/or opinion evidence supports her physical RFC finding.

## CONCLUSION

For the foregoing reasons, this Court finds that the Commissioner's denial of DIB and SSI was erroneous as a matter of law and not based on substantial evidence. The Court accordingly grants Plaintiff's Motion for Judgment on the Pleadings to the

extent that the Commissioner's decision is reversed and the matter is remanded for further administrative proceedings consistent with this Decision and Order.  Defendant's Motion for Judgment on the Pleadings is denied.

**IT IS SO ORDERED.**

                                        **S/Michael A. Telesca**

                                        _____
                                        HONORABLE MICHAEL A. TELESCA
                                        United States District Judge

DATED:      May 28, 2014
            Rochester, New York